IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § | Civil Action No. 4:24-cv-02861 |
| Plaintiff, | § § | |
| v. | § § | ORIGINAL COMPLAINT |
| VIBRALIFE OF KATY, LLC, | § § | |
| Defendant. | § § | JURY TRIAL DEMANDED |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, *as amended*, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability; and to provide appropriate relief to Kara Burgess ("Burgess"), who was adversely affected by such practices. As alleged with greater particularity below, Defendant VibraLife of Katy, LLC ("Defendant" or "VibraLife"), has engaged in unlawful discrimination and retaliation by failing to accommodate Burgess, demoting her from a full-time position to PRN, and ultimately terminating her employment because of her disability.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990, *as amended* ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, *as amended* ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

1

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Texas, Houston Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. Defendant VibraLife of Katy, LLC, is a Texas limited liability company. At all relevant times, VibraLife of Katy, LLC, has been doing business in the State of Texas and the city of Katy, and has continuously had at least 15 employees. Defendant may be served by serving its registered agent for service of process, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Burgess filed a charge with the Commission alleging violations of the ADA by VibraLife.

8. On June 9, 2023, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with

the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and to provide appropriate relief.

9. Thereafter, the Commission engaged in communications with Defendant to provide it with the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10. On July 24, 2023, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. VibraLife is a rehabilitation center and assisted living facility located in Katy, Texas.

13. Burgess is a registered nurse and nurse practitioner. She has Circadian Rhythm Disorder (sleep disorder) which substantially limits one or more of her major life activities, including sleeping.

14. Burgess is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8), in that she has an impairment that substantially limits a major life activity or major bodily function, she has a record of an impairment that substantially limits a major life activity or major bodily function.

15. Since at least September 25, 2022, Defendant has engaged in unlawful employment practices on the basis of disability, in violation of Sections 101 et seq. of Title I of the ADA, 42 U.S.C. § 12101 et seq.

16. On or around August 15, 2022, Burgess applied for an advertised full-time night-shift nursing position with VibraLife. The job posting provided that the selected candidate would be required to work 36 hours per week (three x 12-hour shifts). In Burgess's cover letter to VibraLife, she voluntarily disclosed her sleep disorder which causes day/night reversal.

17. During her job interview with VibraLife's Assistant Director of Nursing Helen Sparks, Burgess was advised that she would work a rotating 7pm - 7am schedule, including every other weekend and some holidays. Burgess was offered the position pending a drug screen, background check, and CPR class. According to Burgess's personnel file, she was hired as a full-time employee at a rate of $41/hour.

18. During her onboarding process Burgess realized that, contrary to Defendant's job posting, VibraLife scheduled its nurses to work a fourth 12-hour shift every other week. Burgess confirmed with a co-worker that VibraLife scheduled its nurses to work three 12-hour shifts one week followed by four 12-hour shifts the next week. Upon realizing that she would be required to work an additional shift every other week, Burgess immediately attempted to contact VibraLife's Director of Nursing Bernadette Boamah via phone and email regarding her inability to work more than three 12-hour shifts per week because of her sleep disorder. Burgess also submitted a written note under the door of the Assistant Director of Nursing and the Director of Nursing requesting that her schedule be limited to the express terms of the job posting and offer; that is three 12-hour shifts per week.

19. On or around September 20, 2022, Burgess spoke with the Director of Nursing about her accommodation request to only work three 12-hour shifts per week. The Director of Nursing informed Burgess that nurses were required to work four 12-hour shifts every other week and that Burgess needed to notify her whether she could do the job. The Director of Nursing

declined to engage in the interactive process or otherwise provide Burgess with a reasonable accommodation.

20. On or around September 23, 2022, Burgess slid another written note along with an article discussing how schedule modifications could be considered a reasonable accommodation under the ADA under the Assistant Director of Nursing and Director of Nursing's door.

21. On or around September 25, 2022, the Director of Nursing sent a text message to Burgess stating she didn't think the job was a good fit for her due to Burgess's health concerns.

22. On or around September 28, 2022, the Director of Nursing recommended to Burgess that she consider transitioning from full-time status to PRN (as needed) status. Burgess rejected the offer and re-urged her request that her work schedule be limited to the express terms of Defendant's job posting. The Director of Nursing denied Burgess's request and responded that the work schedule was "mandatory."

23. The next day, on or around September 29, 2022, the Director of Nursing sent an email to VibraLife's HR Assistant Betsy Tucker stating "[t]he nurse Kara Burgess, RN, will be PRN for now as she is dealing with a few health issues and not able to meet the needs of the facility…" The same day, without notifying Burgess, VibraLife demoted Burgess; converting her employment to PRN and retroactively reduced her pay to $37/hour effective as of September 25, 2022.

24. On or around October 1, 2022, Burgess sent a message to the Director of Nursing again imploring her to consider her request for a reasonable accommodation. The Director of Nursing did not respond.

25. On or around October 4, 2022, Burgess sent an email to VibraLife's Talent Acquisition Partner Ryan Beaver – the person that recruited her for the position – asking for his help in getting placed on the work schedule. He did not respond.

26. On October 5, 2022, Burgess sent a text message to the Director of Nursing pleading to be placed on the upcoming night-shift schedule. The Director of Nursing did not respond.

27. There is no indication that anyone from VibraLife ever responded to Burgess's messages or placed her on the work schedule.

28. On or around November 13, 2022, VibraLife terminated Burgess's employment. Under the reason for Burgess' termination, Defendant's staff wrote "PRN unavailable."

29. Defendant failed to accommodate Burgess and failed to engage in the interactive process to determine if a reasonable accommodation was necessary or available in violation of Section 102(b)(5)(A) of the ADA, 42 U.S.C. § 12112(b)(5)(A), and any other applicable provision of the ADA.

30. Defendant discriminated and retaliated against Burgess when it subjected her to adverse employment actions – demotion and termination – because of her disability and because she engaged in protected activity when she requested a reasonable accommodation of her disability, in violation of Sections 102(a), (b)(1) and (b)(5)(B) of the ADA, 42 U.S.C. §§12112(a), (b)(1) & (b)(5)(B), and in violation of Section 503(a) of the ADA, 42 U.S.C. § 12203(a) and any other applicable provision of the ADA.

31. The effect of Defendant's unlawful employment practices complained of above has been to deprive Burgess of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability in violation of the ADA.

32. The unlawful employment practices complained of above were intentional.

33. Defendant acted with malice and/or reckless indifference to the federally protected rights of Burgess when it engaged in the unlawful employment practices complained of above.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in discrimination on the basis of disability.

B. Grant a permanent injunction enjoying Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in retaliation against employees who have requested reasonable accommodation under the ADA or otherwise exercised their rights under the ADA.

C. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

D. Order Defendant to make whole Burgess by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices described above, including, but not limited to, reinstatement and/or front pay.

E. Order Defendant to make whole Burgess by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to, the value of lost insurance benefits, job search expenses, and out out-of-pocket expenses in amounts to be determined at trial.

F.  Order Defendant to make whole Burgess by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

G.  Order Defendant to make Burgess whole by ordering instatement of Burgess to a comparable position and shifts she would have had absent Defendant's discrimination; or, if instatement is impractical, award Burgess front pay in the amounts to be proven at trial;

H.  Order Defendant to pay punitive damages for its malicious and reckless indifference to Burgess's federally protected rights, as described above, in amounts to be determined at trial.

I.  Grant such further relief as the Court deems necessary and proper in the public interest.

J.  Award the Commission its costs of this action.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**KARLA GILBRIDE**
General Counsel

**CHRISTOPHER LAGE**
Deputy General Counsel
131 M Street, N.E.
Washington, D.C. 20507

**RUDY L. SUSTAITA**
Regional Attorney

**KATHY D. BOUTCHEE**
Assistant Regional Attorney

*/s/ N. Joseph Unruh*
**N. Joseph Unruh**
Trial Attorney
Attorney-in-Charge
Texas Bar No. 24075198
S.D. Tex. No. 1571957
neil.unruh@eeoc.gov

Equal Employment
Opportunity Commission
Houston District Office
Mickey Leland Federal Building
1919 Smith Street, 7th Floor
Houston, Texas 77002
346.327.7703 [Telephone]
713.651.7995 [Facsimile]

**COUNSEL FOR EEOC**